| |
|---|
| **Brennan v MacDonald** |
| 2023 NY Slip Op 34765(U) |
| May 19, 2023 |
| Supreme Court, Nassau County |
| Docket Number: Index No. 601143/21 |
| Judge: Randy Sue Marber |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SHORT FORM ORDER

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

Present: **HON. RANDY SUE MARBER**
                                    **JUSTICE**                                                    TRIAL/IAS PART 2
_____X

MICHAEL W. BRENNAN,

                                        Plaintiff,                         Index No.: 601143/21
                                                                          Motion Sequence...01
                    -against-                                             Motion Date...02/01/23
                                                                                        **XXX**
GLENN J. MACDONALD, M.D.,

                                        Defendant.
_____X

Papers Submitted:
Order to Show Cause……..........................................x
Affirmation in Opposition…………..………………….x
Reply Affirmation……………………………………….x

Upon the foregoing papers, the motion by the Defendant, GLENN J. MacDONALD, M.D. ("Defendant" or "Dr. MacDonald"), brought by Order to Show Cause signed by this Court (12/19/22, Peterson, J.) seeking an Order for, *inter alia*, the following relief: (1) pursuant to CPLR §3211 (a)(7) dismissing the complaint of the Plaintiff, MICHAEL W. BRENNAN ("Plaintiff"), pursuant to the waiver and limitation on civil action clauses contained in the Federal statute known as "Air Transportation Safety System and Stabilization Act, Public Law 107-42", that was triggered by the Plaintiff's filing of a claim through the September 11ᵗʰ Victim Compensation Fund (the "VCF"); (2) pursuant to CPLR § 3025, granting Defendant leave to amend his answer to include the affirmative defenses of "Waiver and/or Estoppel" based upon Plaintiff's election to

1

[* 1]

proceed with a claim through the VCF; and (3) upon the granting of leave to amend Defendant's answer, an Order, pursuant to CPLR § 3211(a)(1), (a)(3) and/or (a)(5) dismissing the Plaintiff's complaint as barred by the Air Transportation Safety and System Stabilization Act, Public Law 107-42, as a result of Plaintiff's filing of a claim through the VCF, is decided as hereinafter provided.

**Facts and Procedural History**

In the aftermath of the September 11, 2001 terrorist attacks on New York City's World Trade Center, the Plaintiff, then employed as a Bay Constable in the Town of Hempstead, responded to the attack site, colloquially known as "Ground Zero," in order to provide assistance. The Plaintiff was initially sent for the purpose of transporting injured individuals and survivors, however, once it was determined that there would be no more survivors, he assisted in providing security for the area and in transporting workers who could not reach lower Manhattan by vehicle. The Plaintiff was part of a crew that ferried rescue workers between Staten Island and New Jersey and lower Manhattan.

Following his service, the Plaintiff was eligible to and did enroll in the World Trade Center Health Clinic (the "Clinic") for purposes of undergoing yearly screening examinations. As a result of these weekly screenings, on or about July 2, 2015, the Plaintiff received a letter from the Clinic notifying him that he had abnormal blood test results and advising him to follow up with his primary care physician, the Defendant, Dr. MacDonald. Specifically, the Plaintiff had blood in his urine and fatty liver. The Plaintiff recalled bringing these results to Defendant's attention, however, Defendant did not recommend any specific follow up to address these issues.

2

[* 2]

In or about December of 2020, the Plaintiff saw Dr. MacDonald for his annual physical. During that visit, Defendant told Plaintiff that his Prostate-Specific Antigen (commonly known as "PSA") levels were high, and that he had sent Plaintiff a message through the "patient portal." The Plaintiff, though, was unaware of what the "patient portal" was. The Defendant then referred the Plaintiff to a Dr. Katz from NYU Langone Urology. The Plaintiff presented to Dr. Katz on or about December 16, 2020, and advised him of the high PSA and that it potentially could be prostate cancer. Dr. Katz confirmed for Plaintiff that his PSA was indeed high and referred him for further testing. The testing confirmed that Plaintiff did indeed have prostate cancer. The Plaintiff was advised that his cancer had advanced to such a stage that surgery was the only option for him. The Plaintiff had the prostate cancer surgery on February 24, 2021 and some mild complications thereafter.

On January 28, 2021 – prior to his surgery of February 24, 2021 – the Plaintiff filed this medical malpractice action alleging that the Defendant, his former primary care physician, committed malpractice by failing to appreciate the findings in Plaintiff's laboratory results and failing to disseminate those finding to Plaintiff, which ultimately led to a failure to timely diagnose Plaintiff's prostate cancer.

After his surgery, in or about late February-early March 2021, the Plaintiff sought to file a claim with the VCF. As a result, on or about March 3, 2021, Plaintiff received a letter from the World Trade Center Health Program (the "Program") confirming that his prostate cancer was certified as covered for treatment benefits through the Program.

3

[* 3]

The Plaintiff then received a letter from the VCF on or about March 12, 2021 confirming the receipt of his claim.

Discovery proceeded in this action, apparently without Defendant being advised that Plaintiff had filed a claim with the VCF. Once discovery was complete, the Plaintiff filed his Note of Issue on November 11, 2021. Settlement conferences were held, at the Court's direction, on July 28, 2022 and October 6, 2022. The parties were then referred for the trial of this action. Additional settlement discussions were held at the trial scheduling conference, to no avail, and the matter was set down for jury selection on January 9, 2023.

Further settlement conferences were held through the Chambers of the Administrative Judge—10th Judicial District, Nassau County. It was over the course of these settlement conferences, held on October 28, 2022, November 9, 2022, and December 2, 2022, that the Defendant apparently learned of Plaintiff's filing of a claim with the VCF. Upon learning of this information, the Defendant took the position that, at the very least, he would be entitled to a set-off for any recovery the Plaintiff received from the VCF. In taking this position, the Defendant did note that he could not find case law on the issue (*See*, Affirmation of Michael R. Walker, Esq. in Support of Defendant's Motion at ¶¶19-20 ["Walker Affirmation"]). The Plaintiff declined to provide the Defendant with authorizations related to his submissions with the VCF. Notably, documents that were subsequently disclosed revealed VCF's determination that Plaintiff was found eligible to receive compensation for his prostate cancer diagnosis, and by letter dated May 20, 2022, the VCF notified Plaintiff that he was awarded the sum of $200,000.00 (*See* VCF Decision

4

[* 4]

on Plaintiff's Claim dated 05/13/22, and Award Letter dated 05/20/22, NYSCEF Doc. No. 65).

## The Instant Motion

The Defendant then determined to file the instant motion, ostensibly, at first, to compel Plaintiff's production of the authorizations. However, counsel for the Defendant learned, over the course of preparing this motion, that participation in the VCF included a limitation on the ability of individuals who received compensation from the VCF to bring civil actions. As a result, this motion to compel became a motion to amend Defendant's answer to include the bar on Plaintiff's ability to bring a civil action related to his 9/11-related cancer and to dismiss the action on those grounds.

In opposition, the Plaintiff argues that the Defendant's motion to amend his answer to include the affirmative defense of the VCF's limitation on civil actions should be denied as prejudicial to Plaintiff and that, in any event, even assuming that Defendant was permitted to amend this answer to assert participation in the VCF as an affirmative defense, Defendant's motion to dismiss should be denied because Plaintiff's claim of medical malpractice for Defendant's failure to timely and properly diagnose Plaintiff's prostate cancer is not in any way related to the 9/11 attacks.

## Discussion

Following the terrorist attacks on September 11, 2001, the United States Congress passed the "Air Transportation Safety and Stabilization Act," (the "Act") which, among other things, created the VCF. In creating the VCF, Congress included in the statute an express "Limitation on Civil Action," which provides, in pertinent part, as follows:

5

[* 5]

(B) LIMITATION ON CIVIL ACTION—

(i) IN GENERAL—Upon the submission of a claim under this title, the claimant waives the right to file a civil action (or to be a party to an action) in any Federal or State court for damages sustained as the result of the terrorist-related aircraft crashes of September 11, 2001. The preceding sentence does not apply to a civil action to recover collateral source obligations.

Public Law 107-42, Title IV, §405(c)(3)(B)(i).

The guidance promulgated by the federal government in setting up and administering the VCF provides some additional information on these limitations. For example, the VCF's website, in Section 1.3, entitled "Policies and Procedures", provides, in pertinent part:

9/11 Related Lawsuits

As a general rule, you cannot have an active 9/11-related lawsuit at the time you submit your VCF claim or amend your claim to add a new eligible condition. You must identify all 9/11 related lawsuits when you submit your claim form. A 9/11 related lawsuit is any civil action in which you are seeking to recover damages based on your presence at a 9/11 crash site, your exposure to toxins, or a theory of causation related to your VCF-eligible condition or a VCF-compensable death (e.g., product liability, medical malpractice, etc.)

Furthermore, §1.3(a) provides that

When you submit a VCF claim, you waive your right to file a civil action (or be a party to an action) in any federal or state court for damages sustained as a result of the terrorist-related aircraft crashed of 9/11, or for damages arising from or related to debris removal. This means that you waive your right to be a party to a future lawsuit even before the VCF determines whether or not you are entitled to compensation.

Additionally, subdivision (c) of §1.3 of the Policies and Procedures section sets forth requirements for individuals who filed a lawsuit at any time prior to filing a VCF

6

[* 6]

claim to withdraw such lawsuit, which "must be dated no later than the date you submit your claim or amendment seeking compensation for that condition." Section §1.3(d) contains specific requirements for individuals who have settled their lawsuits prior to filing for VCF compensation.

Moreover, the claim form on the VCF website contains a section seeking information on the victim's participation in lawsuits related to 9/11, as well as a "Personal Injury Claim Documentation Checklist," which instructs VCF claimants regarding the documentation necessary to file a claim with the VCF if they have a pending lawsuit related to their 9/11 injury.

The Act and the guidance promulgated by the federal government placed on the VCF website, have been interpreted by the United States Court of Appeals for the Second Circuit. In *Virgilio v The City of New York*, 407 F3d 105, 112-113 [2d Cir. 2005], the Court found that the waiver provision of the act was unambiguous and that "[t]he language of the waiver provision clearly states that Fund claimants waive their right to bring civil actions resulting from any harm caused by the 9/11 attacks upon the submission of a claim" to the VCF. The Court further noted that many people, in widely differing circumstances, have died or been injured as a result of the attacks and that the Act, in authorizing the VCF, determined that should an individual elect to avail themselves of the benefits of the VCF, then that would be the only remedy for their injury (*See, Virgilio*, 407 F3d at 114).

Here, the Plaintiff has initiated this action alleging that the Defendant committed medical malpractice in failing to timely and properly diagnose his prostate

7

[* 7]

cancer – a VCF-eligible condition – which he reasonably believes was caused by his service to the State of New York, and indeed, the United States, in the aftermath of 9/11. This belief led Plaintiff to file a claim with the VCF. The statute as written by Congress makes clear that this is Plaintiff's only remedy once he chooses to elect it. "An individual who chooses this non-judicial route" plainly waives his right to file a civil action (*Wewe v Mt. Sinai Hospital*, 518 F.Supp. 643 [EDNY 2021]) and "gave up [his] rights" to bring a claim in the federal or state Courts (*In Re September 11 Litigation*, No. 21 MC 97 (AKH), 2007 WL 196559, *1 [SDNY 2007]).

Moreover, to the extent that the Plaintiff argues that this medical malpractice action was not contemplated by Congress to be an injury that was "related to" the 9/11 attacks, the Court notes that Plaintiff's theory of recovery is the Defendant's failure to diagnose a 9/11 related cancer that arose from his work at Ground Zero. It is presumed, particularly as indicated by his filing a claim with the VCF, that the Plaintiff believes that "but for" his presence at a 9/11 crash site and/or exposure to toxins at the site, he would not have developed prostate cancer, plainly bringing Plaintiff's condition under the purview of the Act.

Based on these clear statements of the law, the Defendant's application for leave to file an amended answer asserting the affirmative defenses of Waiver and/or Estoppel is granted. The proposed answer submitted as Exhibit "J" to the Walker Affirmation is deemed to be served and filed, *nunc pro tunc.* Accordingly, the Defendant's motion to dismiss shall be granted and the Plaintiff's complaint dismissed.

Accordingly, it is hereby

8

**ORDERED** that Defendant's motion for leave to amend his answer is **GRANTED** the amended answer as annexed to the moving papers are deemed served and filed *nunc pro tunc* as of the date of service of this motion; and it is further

**ORDERED**, that the Defendant's motion to dismiss the complaint pursuant to CPLR §3211(a)(7) is **GRANTED**, and the complaint is hereby **DISMISSED**.

This constitutes the decision and order of the Court.

DATED:     Mineola, New York
          May 19, 2023

**Hon. Randy Sue Marber, J.S.C.**
**XXX**

# ENTERED

## May 19 2023

NASSAU COUNTY
COUNTY CLERK'S OFFICE

9